# United States District Court

## DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)

Mai Ly Tran Lam

dba US Gold Trading Corporation

dba LVM Jewelry

1351 Wisconsin Ave, NW

Washington D.C. 20007

APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT

CASE NUMBER:

I Sean C. Marshall being duly sworn depose and say:

Special Agent, Criminal Investigation

I am a(n)     Internal Revenue Service, U.S. Treasury        and have reason to believe

Official Title

that ☐on the person of or ☐on the property or premises known as (name, description and/or location)
US Gold Trading Corporation and LVM Jewelry, a multi-occupant business building located at 1351 Wisconsin Ave, NW Booth 25 & 26, Washington DC 20007.  This is a multi colored brown, red and tan brick , two-story building. A blue neon sign with "Georgetown stands vertically over a blue and yellow awning with the words "The National Jewel Center" above the front entrance.  The neon sign starts above the roof of the building and runs just above the owning.  The blue owning runs across the front entrance which is a multi glass door access way.  There are two small display windows facing Wisconsin Ave on either side of the glass doorway. US Gold

in the Judicial District of the District of Columbia
there is now concealed certain property, namely
the items listed on attachment A, attached hereto and incorporated herein by reference; all of which are the evidence, fruits and instrumentalities of possible violations of Title 26 USC Sections 7206(1) and Title 31 USC Sections 5324 and 5331 and Title 18 USC Section 1956.

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)
evidence, fruits and instrumentalities of crimes against the United States

concerning the above violations.
The facts to support a finding of Probable Cause are as follows:
See Attached Affidavit.

Continued on the attached sheet and made a part hereof.        ☐ Yes        ☐ No

_____
Signature of Affiant

**Sworn to before me, and
subscribed in my presence**

_____     at     Washington, District of
Date                                              Columbia
                                                      City and State

John M. Facciola
United States Magistrate Judge          _____
Name and Title of Judicial Officer          Signature of Judicial Officer

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

**AFFIDAVIT IN SUPPORT OF APPLICATION**  )
**FOR SEARCH WARRANT FOR**  )
**1351 Wisconsin Avenue, NW**  )    **Misc. No. _____**
**d/b/a "US GOLD TRADING CORP.**  )
**d/b/a "LVM JEWLERY"**  )
)    <u>**UNDER SEAL**</u>

## I.  BACKGROUND AND EXPERIENCE

     I, Sean C. Marshall, Special Agent of the Department of Treasury, Internal Revenue Service, Criminal Investigation, being duly sworn, depose and state as follows:

     1.  I am employed as a Special Agent with the Internal Revenue Service Criminal Investigation (IRS-CI), and have been employed in this capacity since June 2000.  My responsibilities include the investigation of possible criminal violations of the Internal Revenue Laws under Title 26 of the United States Code and related offenses, particularly as found in Title 18 and Title 31 of the United States Code.  I have successfully completed the Criminal Investigators/Special Agents training courses at the Federal Law Enforcement Training Center. In these programs, I studied a variety of law enforcement, criminal investigator and tax crime issues, including search and seizure.  Since becoming a Special Agent with IRS-CI, I have received formal training in conducting criminal tax investigations and other types of financial investigations.  A large part of my duties as an IRS-CI Special Agent involve analyzing records maintained by businesses.  Some of these records include ledgers, journals, invoices, receipts and bank documents. I analyze these records to determine the existence of criminal activity and to develop evidence of criminal activity.  I hold a Masters degree in Organizational Management and bachelor's degree in Business Management from the University of Phoenix at San Diego and have an Associates degree in accounting with at least 30 credit hours in accounting.

2. I have conducted or assisted other law enforcement agents in numerous financial investigations of alleged criminal violations of the Internal Revenue laws, Bank Secrecy Act, Money Laundering Control Act, and other federal offenses, which resulted in the subsequent prosecution and conviction of numerous individuals. These investigations involved computing individual incomes using specific item and indirect methods of proof, the tracing of legal and illegal funds through the banking system, and tracing and documenting asset acquisitions and expenditures. I have conducted and participated in the execution of numerous search warrants, including the search of residences, vehicles, and business offices of targets and their associates.

3. Based on my training and experience, in financial investigations and money laundering investigations, I know that:

a. It is customary for businesses to maintain originals and copies of sales records, receipts of payment, invoices, financial records, deposit records and related documents for their clients for IRS reporting requirements and in the event of an IRS audit.

b. It is customary for businesses to maintain receipts for materials used in the conduct of their business.

c. Records of illegal activities are often maintained and stored at businesses and residential locations for significant periods of time, as long as three (3) years or more.

d. The records are likely to be stored at residences at business locations.

e. If a business is conducting illegal activities, they often maintain two sets of books and records.

## II. LOCATION TO BE SEARCHED

2

This Affidavit is being submitted in support of an application, which seeks authorization to search the following location:

US Gold Trading Corporation, dba LVM Jewelry, located at 1351 Wisconsin Avenue, NW, Booths 25 and 26, Washington D.C.

### III. DESCRIPTION OF PREMISES

US Gold Trading Corporation and LVM Jewelry conducts its business out of a multi-occupant business building located at 1351 Wisconsin Ave, NW, Washington DC 20007.  This is a multi colored brown, red and tan brick, two-story building. A blue neon sign with "Georgetown" stands vertically over a blue and yellow awning with the words "The National Jewel Center" above the front entrance.  The neon sign starts above the roof of the building and runs just above the owning.  The blue owning runs across the front entrance, which is a multi glass door, access way. There are two small display windows facing Wisconsin Ave on either side of the glass doorway. US Gold Trading Corporation and LVM Jewelry conduct their business out of Booths 25 and 26 located in the far back left corner of the "The National Jewel Center."  The numbers "25" and "26" are black in color with gold background and are displayed on the back mirrored walls of the kiosk from which US Gold Trading Corporation and LVM Jewelry conduct business.

## IV.  THE INVESTIGATION

4.  This affidavit is based on evidence and information developed through undercover operations, surveillance, and other relevant information gathered during the course of the investigation.  This affidavit is not intended to include all the information known to me regarding this investigation.  Your affiant has included in this affidavit facts, which he believes, are sufficient to support a probable cause finding for he issuance of the requested search warrants.  Your affiant seeks court authorization to search the business that is known to individuals in the narcotics trade, as a non-financial trade or business that circumvents the required reporting procedures of cash purchases of more than 10,000 for jewelry.  Based on my training and experience, coupled with my personal knowledge of the facts of the investigation to which this affidavit relates and information from other IRS-CI Special Agents, I respectfully submit that there is probable cause to believe that Mai Ly Tran Lam, conducting business as US Gold Trading Corporation and LVM Jewelry has on their premises evidence of the preparation and filing of fraudulent returns in violation of Title 26 USC, Sections 7206(1), evidence of structuring transactions to evade reporting requirements in a trade or business over $10,000 in violations of Title 31 USC, Sections 5324 and 5331, and evidence of money laundering in violation of Title 18 USC, Sections 1956.

5.  This investigation has shown that Mai Ly Tran Lam and Minh Van Lam operate a jewelry business out of a kiosk located at 1351 Wisconsin Ave, NW, Washington D.C. 20007. Apparently due to lack of business space for storage and privacy, Mai Ly Tran Lam also operates her business with Minh Van Lam at her residence.  Mai Ly Tran Lam is the joint business owner with Minh Van Lam, dba US Gold Trading Corporation and dba LVM Jewelry, a schedule C business and is not incorporated, despite its name.  It is unknown at this time when the Lam's

4

opened their business, but it is known that they have been in business as far back as 2001 at this location.

6.    This investigation was initiated pursuant to information received from a Drug Enforcement Administration (DEA) Confidential Informant #1 (hereinafter CI-1) who brought this information to the attention of the IRS-CI.  CI-1 had an intimate relationship with the subject (hereinafter SUB-1) of an on going joint OCDETF investigation.  Information obtained from the informant indicates that LVM Jewelry Inc. and US Gold Trading Corporation, owned and operated by Mai Ly Tran-Lam (hereinafter Tran) and Minh Lam (hereinafter Lam), is predisposed to selling jewelry in excess of $10,000 to known drug dealers without filing the appropriate reports.

7.    CI-1 indicated that on several occasions she/he accompanied SUB-1 to a jewelry market in the Georgetown area of Washington D.C., to purchase large amounts of gold and diamond jewelry.  CI-1 identified the location as 1351 Wisconsin Ave NW, Washington D.C.  It is a large building, which holds 15 – 20 jewelry vendors Kiosks, and is owned by Heon Inc, located at 3427 Wisconsin Ave NW, Washington, D.C. 20016-3005.  Heon Inc. rents out the various retail spaces to the vendors operating at 1351 Wisconsin Ave.

8.    CI-1 indicated that SUB-1 only frequented a certain Kiosk run by a woman named Maily LNU and her husband name unknown.  Further research revealed that a Mai Ly Tran Lam and Minh Van Lam operate a business by the name of LVM Jewelry at the location of the jewelry market located at 1351 Wisconsin Ave NW, Washington D.C.  This business has been in business for several years at this location.  LVM Jewelry is a subsidy of US Goldtrading Corp USA and US Goldtrading Corp VM (Vietnam).

9.    CI-1 stated that SUB-1 purchased substantial high-priced jewelry, including several pairs of earrings, rings, watches and a necklace and pendant from Tran.  CI-1 stated that SUB-1 always

paid cash and that the items he purchased for her/him were not cheap in any way, and that many times SUB-1 paid more than $10,000 in cash for her/his items or a combination of items purchased from Tran. CI-1 mentioned one necklace and pendant in particular as a platinum and diamond cross pendant with necklace that CI-1 stated SUB-1 paid $30,000 in cash to Tran. CI-1 added that she/he never saw any paperwork or receipts for the jewelry, SUB-1 purchased from Tran.

10. A DEA subpoena resulted in the production of a jewelry appraisal report that SUB-1 requested that CI-1 acquire from a Professional Gemological Service located in Virginia. The appraisers appraised several pieces of jewelry that SUB-1 purchased from Tran. The report lists: pair of earrings lady's platinum and diamond stud, value $19,600; Necklace and Pendant, platinum and diamonds, value $29,450.

11. CI-1 stated that SUB-1 would visit her/him on her/his job and stated to her/him on several occasions that he was having Tran produce a Platinum and diamond necklace for himself, which he paid $130,000. On one occasion, CI-1 stated that SUB-1 showed up at her/his job wearing a necklace, like the one he had described Tran was producing for him. According to CI-1, SUB-1 spent lots of money on himself to keep up his image as a player in the drug business.

12. On another occasion CI-1 stated that SUB-1 told her/him that Tran was in the process of producing a platinum engagement ring with matching wedding rings for him and SUB-1's fiancé (hereafter as SUB-2). According to CI-1, SUB-1 was always bragging about the high dollar items he has been purchasing from Tran for SUB-2.

13. A DEA subpoena resulted in the production of a jewelry appraisal report that SUB-1 requested that SUB-2 have prepared by a Professional Gemological Service located in Virginia. The appraisers appraised several pieces of jewelry that SUB-1 purchased from Tran: Lady's platinum ring with 5.00 carat diamond, value $102,250; Lady's platinum ring with diamonds, value

$3,650; One Gent's platinum and diamond ring, value $7,500; Gent's white gold and diamond bracelet, value 69,350; One gent's platinum and diamond necklace pendant, value $30,575; One platinum diamond necklace, value $130,175.

14.    CI-1 stated that SUB-1 purchased a Rolex watch from Tran, which SUB-1 paid about $100,000.  CI-1 stated that she/he learned that the Rolex watch was seized during the search warrant and arrest of CON-1.  In November of 2003 DEA, agents searched the residence of SUB-1 and CON-1 on Fox Hall Crescent Court, NW Washington DC.  Agents seized $18,000 and a firearm from CON-1's bedroom and seized $80,830 in cash and a Rolex watch, and other jewelry from a safe in SUB-1 bedroom.

15.    A request was sent to the Detroit Computing Center database requesting a check of all Form 8300 – Report of cash payments over $10,000 received in a trade or business, for the addresses:  2105 Arrowleaf Drive, Vienna, VA, the address used on business records of US Gold Inc., USA. and home address for Tran and Lam, and 1351 Wisconsin Ave., NW, Washington DC, the business address for LVM Jewelry.  The search produced negative results for Tran, Lam, US Gold Trading Corporation and LVM Jewelry, indicating that there were no Form 8300's originating from the addresses, names or business mentioned above.

16.    SUB-1 was arrested and indicted for distribution of over 125 kilo's of cocaine in the Washington D.C. area and money laundering.  SUB-1 has pleaded guilty to these charges pursuant to a cooperation plea agreement and has substantiated the information above to Special Agents of the Internal Revenue Service and the DEA.  SUB-1 confirmed several large purchases of jewelry from Tran, ranging from $30,000 to $120,000, laundering an estimated $500,000 over a 4-year period and indicated that Tran would require installments or payments for these pieces in various amounts, generally under $10,000 in cash.

7

## V.  COOPERATING INDIVIDUALS

17.  Also arrested was an associate of SUB-1 who has also pled guilty to distribution charges pursuant to a cooperation plea agreement.  This individual will be referred to as Cooperating Witness (CW) and he/she has substantiated the information above and provided that he/she was present for several large purchases from Tran by SUB-1. CW stated that he/she was present to one such purchase of jewelry by SUB-1 from Tran that included the single payment of approximately $70,000 in cash that he/she personally carried to Tran's business at the above location for the purchase of jewelry.  According to CW there were no reporting forms or receipts provided.  CW was shown confirmatory photographs of Lam and Tran and CW positively identified them as the people from whom SUB-1 and CW purchased the high value jewelry for large sums of cash. During an undercover operation with CW, Lam acknowledged her sales of the high value jewelry to SUB-1.

## VI.  UNDERCOVER OPERATIONS

18.  Previous undercover operations yielded the purchase of a gold and diamond necklace, by the UC for $20,500.  The UC was able to make several payments, ranging from $2,500 to $9,500 for the single piece of jewelry.  The UC also engaged Tran in discussions on evading the paperwork, and methods of money laundering of drug money through real estate transactions and the purchase and trading of liquid assets such as certified diamonds.

19.  On March 23, 2006, I led an undercover operation at LVM Jewelry and US Gold Trading Corporation at 1351 Wisconsin Avenue, NW, Washington D.C.   Two undercover agents posed as clients seeking assistance in the possible purchase of gold and diamond jewelry.  Both UCA's are IRS-CI employees who have been trained for undercover operations of this type.  In an

8

effort to protect the identity of the undercover agents, the agents will be referred to in a neutral gender and as UCA #1 and UCA #2.

20.  During the first undercover operation, both UCA's walked into the business location and browsed until coming to the jewelry kiosk run by Mai Ly Lam Tran and Minh Van Lam, know as US Gold Trading Corp, dba LVM Jewelry.  Mai Ly introduced herself the UCA's as Molly, and engaged them in discussions of ordering a piece of Jewelry.  UCA #1 asked about paying in cash and paying all at once.  Mai Ly responded that she does not take all the cash at once, because it caused too much work, that UCA#1 can make payments of no more than $3,000 at a time until the amount was paid in full.  UCA #2 confirmed with Mai Ly that UCA #1 could only pay $3,000 each visit until the amount was paid and Mail Ly stated again, that it causes too much work.  UCA#1 stated to Mai Ly that he did not want any paperwork done, because he did not want to get busted. Mai Ly continued with showing the UCA's various pieces of Jewelry.  UCA #1 then asked about the procedures to make the necklace in which Mai Ly stated that he would need to make a down payment of $2,500, then the settings would be made, and the diamonds ordered.  Mai Ly stated that then UCA#1 would pick out the diamonds and they would be mounted.  The UCA's thanked Mai Ly and left the store.

21.  On July 25, 2006, I led an undercover operation at LVM Jewelry and US Gold Trading Corporation at 1351 Wisconsin Avenue, NW, Washington D.C.  One undercover agent posed as a client seeking assistance in the possible purchase of gold and diamond jewelry.  The UCA is an IRS-CI employee who has been trained for undercover operations of this type.  In an effort to protect the identity of the undercover agent, the agent will be referred to in a neutral gender and as UCA #1.

22.  On this undercover operation UCA #1 entered the jewelry market alone and walked into the business location and browsed until coming to the jewelry kiosk run by Mai Ly Lam Tran and Minh Van Lam, know as US Gold Trading Corp, dba LVM Jewelry.  Mai Ly remembered UCA#1 from the last operation and even remembered the specific piece of jewelry UCA #1 looked at.  UCA #1 discussed with Mai Ly a gold and diamond necklace with a price of $22,400 to special order.  UCA#1 asked about purchasing a Rolex watch, which Mai Ly replied that she no longer sells Rolex's because she was not an authorized dealer.  UCA#1 was wearing a Rolex watch, which she valued at $21,000.  UCA#1 told Mai Ly that a customer traded UCA#1 the Rolex watch and $10,000 for some cocaine.  UCA#1 further stated that UCA#1 has been working hard and selling cocaine.  At which point Mai Ly continues with business as normal.  UCA#1 asked again what the order procedures were and Mai Ly stated that UCA#1 would need to make a down payment and then make installment payments until the amount was paid off.  UCA#1 then asked if she could just take all the cash at once.  Mai Ly replied "No, no, I don't take more than... I don't take more than five thousand at one time". Mai Ly added, "you can give me money or go buy money order at the post office, check put in the mail".  UCA#1 then stated, "I'd just rather pay you cash cause I don't want nobody to know what I do.  I can't find it.  Police find out I'm selling cocaine, I'll end up going to jail.  Can I just bring cash in here, not as much?" Mai Ly replied "Any time, less than five thousand".  UCA#1 told Mai Ly that he will decide if he wishes to purchase the necklace soon, in which Mai Ly stated "Yeah, no problem.  When you make some more money".  UCA#1 responded "Oh, I'm gonna make some more money.  I've got a good deal going down now.  I'm gonna make about twenty thousand on some cocaine I'm selling.  So that's gonna pay for this right here, cause that's what you said, you said this is what twenty two four".  Mai Ly replied "Yeah, twenty two four".  UCA#1 finished his business at the Kiosk and left.

23. On January 17, 2007, I led an undercover operation at LVM Jewelry and US Gold Trading Corporation at 1351 Wisconsin Avenue, NW, Washington D.C. One undercover agent posed as a client seeking assistance in the possible purchase of gold and diamond jewelry. The UCA is an IRS-CI employee who has been trained for undercover operations of this type. In an effort to protect the identity of the undercover agent, the agent will be referred to in a neutral gender and as UCA #1.

24. On this undercover operation UCA #1 entered the jewelry market alone and walked into the business location and browsed until coming to the jewelry kiosk run by Mai Ly Lam Tran and Minh Van Lam, know as US Gold Trading Corp, dba LVM Jewelry. Mai Ly remembered UCA#1 from the last operation and even remembered the specific piece of jewelry UCA #1 looked at. UCA #1 discussed with Mai Ly a gold and diamond necklace with a gold cross for a price of $25,000 to special order. At one point another customer approached and the UCA#1 allowed Mai Ly to assist them. When Mai Ly came back, the UCA#1 stated that UCA#1 did not want them to know what he does and that he sells cocaine and did not want them to think they could rob him. At which Mai Ly replied "I understand, I understand. Do the deal. Bring in the money and we can do the deal". Later UCA#1 stated that he was going to close a deal tonight, selling some cocaine and would give her half then and the rest later. Mai Ly responded, "you don't need to give me a lot and when you come in, give me a little bit and we order chain and diamonds and if you like, we set." UCA#1 asked how much down and Mai Ly replied only $1,500 for the gold. UCA#1 asked Mai Ly "No paper work, No paperwork, right". Mai Ly responded "No, We give you a receipt". UCA#1 stated "I tried to buy a car for $30,000 and the dealer wanted to do some paperwork". Mai stated "Oh, I don't take a lot. I take a little bit under $3,000". UCA#1 stated "I tried to give the guy $30,000 and he said no no no we needed to fill out some paperwork, where does that paperwork go to the

government?" Mai Ly responded "yea, we don't do like that! No, no, yea paperwork we don't take

that much. Come here and give a thousand, a thousand, a thousand every day, no problem. You

pay me somehow under $3, 000, I don't want to take more than that. Too much things to do! Too

much things to do!". UCA#1 stated "I don't want to come here everyday. Mai Ly stated "The law

is the law". Later Mai Ly stated, "just come and drop a little then we don't have to do nothing".

UCA #1 asked for Mai Ly phone number, placed a $1,500 deposit and received a receipt, concluded

the business with small talk and left the store.

25.   On February 1, 2007, I led an undercover operation at LVM Jewelry and US Gold

Trading Corporation at 1351 Wisconsin Avenue, NW, Washington D.C.   One undercover agent

posed as a client seeking assistance in the possible purchase of gold and diamond jewelry.  The

UCA is an IRS-CI employee who has been trained for undercover operations of this type.  In an

effort to protect the identity of the undercover agent, the agent will be referred to in a neutral gender

and as UCA #1.

26.   On this undercover operation UCA #1 entered the jewelry market alone and walked into

the business location and browsed until coming to the jewelry kiosk run by Mai Ly Lam Tran and

Minh Van Lam and known as US Gold Trading Corp, dba LVM Jewelry.  Mai Ly remembered

UCA#1 from the last operation.  Mai Ly asks the UCA#1 "How much you want to give me today?  I

can take eight".  UCA#1 responded "Can I just give you the most of it now?  Can we do like 15, and

then just come back".  Mai Ly replied "No, no, I can't.  I can't take 15, nine." UCA#1 agreed,

stating "Okay.  I'm just trying to know my schedule".  Mai Ly then stated "Yeah, because I don't

want you spend, but I don't want to take more than, you know, I wrote all the papers say don't take

more than 10.  More than 10.  Yeah, they say in the papers for every one of us if we don't take more

than 10, we don't have to figure out the forms".  UCA#1 asked "Okay.  So, the papers said, okay, no

more than 10 or you'll have to fill — you'll have to fill out the form. Okay. Okay. Um, why I will give you whatever I can give you then". Mai Ly then stated "Nine"? UCA#1 stated "Yeah, let's do nine". The UCA#1 counted out $9,000, gave it to Mai Ly and made arrangements to give her the other $9,500 the following day.

27. On February 2, 2007, I led an undercover operation at LVM Jewelry and US Gold Trading Corporation at 1351 Wisconsin Avenue, NW, Washington D.C. One undercover agent posed as a client seeking assistance in the possible purchase of gold and diamond jewelry. The UCA is an IRS-CI employee who has been trained for undercover operations of this type. In an effort to protect the identity of the undercover agent, the agent will be referred to in a neutral gender and as UCA #1.

28. On this undercover operation UCA #1 entered the jewelry market alone and walked into the business location and browsed until coming to the jewelry kiosk run by Mai Ly Lam Tran and Minh Van Lam, know as US Gold Trading Corp, dba LVM Jewelry. Mai Ly remembered UCA#1 from the last operation. UCA#1 made small talk with Mai Ly to include possible future sales of cocaine and jewelry purchases with the proceeds. UC#1 gave Mai Ly $9,500 and finished small talk to include the proposed completion date, and then left the store.

29. On May 23, 2007, I led an undercover operation at LVM Jewelry and US Gold Trading Corporation at 1351 Wisconsin Avenue, NW, Washington D.C. One undercover agent posed as a client seeking assistance in the possible purchase of gold and diamond jewelry. The UCA is an IRS-CI employee who has been trained for undercover operations of this type. In an effort to protect the identity of the undercover agent, the agent will be referred to in a neutral gender and as UCA #1.

30.   On this undercover operation UCA #1 entered the jewelry market alone and walked into the business location and browsed until coming to the jewelry kiosk run by Mai Ly Lam Tran and Minh Van Lam, know as US Gold Trading Corp, dba LVM Jewelry.  Mai Ly remembered UCA#1 from the last operation.  UCA#1 and Mai Ly engaged in a discussion on buying cars and real estate. Mai Ly made several references about not buying big houses or expensive cars and not bringing too much attention to him.  Mai Ly then told UCA#1 to buy small houses and condo's and put all his money into several small condo's, rent them out, sell them later and than the money would be okay to put in the bank.  UCA#1 received the necklace, which he paid $20,500 in cash on three separate occasions.  UCA#1 and Mai Ly further discussed the methods to buy and sell registered diamonds and gems on the open market.  Mai Ly stated the best place to sell the diamonds is China and Hong Kong.  At one point the UCA#1 stated "Yeah. Ah, you know I just like dealing' with you 'cause you --I don't like people askin' questions".  Mai Ly responded "I know.  I know exactly what's going on, and I don't want all the headache".  UCA#1 thanked Mai Ly and left the store.

## VII.  OTHER INVESTIGATIVE LEADS

31.   Additionally, I know from trash taken from the curtilage of the property located at 2105 Arrowleaf Drive on several dates and as recent as 08/16/2007, contained business and tax records associated with US Gold Trading Corporation and LVM Jewelry, and other correspondence addressed to Mai Ly Tran Lam or Minh Van Lam at US Gold Trading Corporation and LVM Jewelry, with the residence address of 2105 Arrowleaf Drive, Vienna VA 22182.

32.   Additionally I know from trash taken from the curtilage of the property located at 2105 Arrowleaf Drive on several occasions contained business and tax records associated with US Gold Trading Corporation and LVM Jewelry, and other correspondence addressed to Mai Ly Tran Lam or Minh Van Lam at US Gold Trading Corporation and LVM Jewelry, with the business address

14

1351 Wisconsin Ave, NW, Washington D.C. 20007 or references made to US Gold Trading

Corporation and or LVM Jewelry located at the address of 1351 Wisconsin Ave, NW, Washington

D.C. 20007.

## VIII.  COMPUTERS

33.  Based on my knowledge and training, I know that searching and seizing information

from computers often requires agents to seize most or all electronic storage devices with related

peripherals to be searched later by a qualified computer expert in a laboratory or other controlled

environment.  This is true based on the following:

a.  The volume of the evidence is large.  Computer storage devices can store the

equivalent of thousands of pages of information, and suspects are capable of concealing criminal

evidence in a large number of places on such devices.  Therefore, searching authorities must sort

through the entire device to determine which files are evidence or instrumentalities of a crime.

This sorting process is protracted and is impracticable to conduct on site, particularly at a

suspect's place of residence.

b.  The technical requirements are unique.  Searching computer systems for criminal

evidence is a highly technical process requiring expert skill and a properly controlled

environment.  The vast array of computer hardware and software available requires even

computer experts to specialize in some systems and applications; therefore, it is difficult to know

before a search which expert is qualified to analyze the system and data.  In any event, however,

data search protocols are exacting scientific procedures designed to protect the integrity of the

evidence and to recover even "hidden," erased, compressed, password-protected, or encrypted

files.  Since computer evidence is extremely vulnerable to inadvertent or unintentional

modification or destruction (both from external sources and from destructive code imbedded in

15

the system as a safety measure), a controlled environment is essential to its complete and accurate analysis.

34.   Your affiant recognizes that US Gold Trading Corporation and LVM Jewelry is a functioning company and that a seizure of the firm's computer network may have the unintended and undesired effect of limiting the firm's ability to provide service to its legitimate customers who are not engaged in evasion of reporting requirements and laundering of proceeds of specified unlawful actives.  In response to these concerns, the agents who execute the search will take an incremental approach to minimize the inconvenience to US Gold Trading Corporation and LVM Jewelry legitimate customers and to minimize the need to seize equipment.  This incremental approach, which will be explained to all of the agents on the search team before the search is executed, will proceed as follows:

a.   The computer expert will attempt to create an electronic "image" of those parts of the computer that are likely to store any files that are needed to keep the legitimate part of the business going.  Generally, imaging is the process of taking a complete electronic picture of the computer's data, including all hidden sectors and deleted files.  This permits a computer or other technical expert to conduct an off-site search for the relevant files described in the warrant from the "mirror image" copy at a later date.  If the computer expert successfully images US GOLD TRADING CORPORATION and LVM JEWELRY's computers, the agents will not conduct any additional search or seizure of the firm's computers.

b.   If "imaging" proves impractical, or even impossible for technical reasons, then the agents will seize those components of the US GOLD TRADING CORPORATION and LVM JEWELRY's computer system that the computer expert believes must be seized to permit the agents to locate the computer files described in the warrant at an off-site location.  If, after

16

inspection, the analyst determines that some or all of this equipment is no longer necessary to retrieve and preserve the evidence, the government will return it within a reasonable time.

35.  Based on my training and experience, I know that searching computerized information for evidence or instrumentalities of crimes commonly requires agents to seize most or all of a computer system's input/output peripheral devices, related software, documentation, and data security devices (including passwords) so that a qualified computer expert can accurately retrieve the system's data in a laboratory or other controlled environment.  This is true because peripheral devices allow users to enter or retrieve data vary widely in their compatibility with other hardware and software.  Many system storage devices require particular input/output (or "I/O") devices in order to read the data on the system.  It is therefore important that the analyst be able to properly re-configure the system as it now operates in order to accurately retrieve the evidence listed above.  If, after inspection, the analyst determines that these items are no longer necessary to retrieve and preserve the data for evidence, the government will return them within a reasonable time.

36.  Based on the foregoing, there is probable cause to believe that MAI LY TRAN AND MINH VAN LAM, d/b/a US GOLD TRADING CORPORATION and LVM JEWELRY's, has committed violations of Title 26, United States Code, sections 7206(1) (fraud and false statement), Title 18, United States Code, section 1957 (Engaging in monetary transactions in property derived from specified unlawful activity), and Title 31, United States Code, section 5324 and 5331(structuring transactions to evade reporting requirements in a non-financial trade or business).

37.  Based on the foregoing, there is probable cause to believe that property and premises described above as US Gold Trading Corporation, dba LVM Jewelry, located at 1351 Wisconsin Avenue, NW, Booths 25 and 26, Washington, contains evidence of the commission of the above offenses, specifically those items listed on Attachment A.

By:

_____
Sean C. Marshall
Special Agent
IRS-CI

Sworn to and subscribed before me
this_____ day of December, 2007, in the District of Columbia

_____
The Hon. John M. Facciola
United States Magistrate Judge
Washington D.C.

18

Attachment "A"

ITEMS TO BE SEIZED

**DESCRIPTION OF ITEMS TO BE SEIZED:**
Based on the facts as recited in the attached affidavit, there is probable cause to believe the following items and records related to Minh Van Lam and Mai Ly Tram, dba US Goldtrading Corporation, and or LVM Jewelry located at 1351 Wisconsin Ave, NW, Washington D.C. 20007, pertaining to the day to day operations of this business, are located at the residence of Minh Van Lam and Mai Ly Tram, at 2105 Arrowleaf Drive, Vienna VA 22182.

**A. RECORDS**
1. Records relating to the purchase, sale, consignment, trade or barter of jewelry items, gems, metals, components and services, to include receipts, purchase orders, statements of payment, installments, journal or log notes, lay away records or any written form of payment or purchases received, material orders, lose gems or precious metals orders, equipment or supplies, gold smiting equipment or supplies ordered, estimates or custom order forms to include designs or molding works or layouts for 2001, 2002, 2003, 2004, 2005, 2006 and 2007.
2. Client files, waivers, address and/or telephone books or listings, rolodex indices, forms of identification, copies of drivers licenses, any other form of identification provided to complete the Form 8300's and any other reporting forms.
3. Forms, any filed or un-filed Form 8300 and CTR's, Landlord sale's (rental) reports, District of Columbia sales reporting forms, sales logs, or reporting devices, Virginia  reporting forms, sales logs, or reporting devices, FINCen or Internal Revenue reporting forms, sales logs, or reporting devices for 2001, 2002, 2003, 2004, 2005, 2006 and 2007.
4. Business records originals and or copies of licenses, certificates of authenticity, articles of incorporation, agreements, bonds, professional licenses, rubber stamps, labels, shipping documents, business cards, calendars, or other items reflecting names, addresses, telephone number, pager numbers, and fax numbers of clients and or employees, associates, financial institutions, or other individuals or business with whom a financial relationship exists.
5. Records of occupancy for business location and residence, rental and/or ownership of business and premises to be searched, including utility and telephone bills, canceled envelopes, rental, purchases or lease agreements and keys, tax assessments for any and all properties in the name of the individuals or business.
6. Bank Records, both for the business and personal, to include; Bank account statements, credit card statements, bank deposit slips, safe deposit box rental agreements, cancelled checks, records pertaining to any and all payments from clients, any and all accounting ledgers, accounting books or records, accounting entries pertaining to client payments and expenses pertaining to the clients or business ventures for years 2001, 2002, 2003,2004, 2005, 2006 and 2007.
7. Originals and/or copies of State, District of Columbia and Federal income tax returns for the tax years 2001, 2002, 2003, 2004, 2005, 2006 and 2007 together with all forms, schedules and attachments; worksheets and/or supporting documentation used in the preparation of tax returns; receipts, bank statements, cancelled checks or other records relating to the individuals and business.

## . COMPUTERS

1. Any and all electronic devices which are capable of analyzing, creating, displaying, converting or transmitting electronic or magnetic computer impulses or data. These devices include computers, computer components, computer peripherals, word processing equipment, modems, monitors, printers, plotters, encryption circuit boards, optical scanners, external hard drives, and other computer related electronic devices.

2. Any and all instructions or programs stored in the form of electronic or magnetic media, which are capable of being interpreted by a computer or related components. The items to be seized include operating systems, application software, utility programs, compilers, interpreters and other programs or software used to communicate with computer hardware or peripherals either directly or indirectly via telephone line, radio or other means of transmission.

3. Any and all information and/or data stored in the forms of magnetic or electronic coding on computer media or a media capable of being read by a computer or with the aid of computer related equipment; this media includes, floppy disks, video cassettes, and any other media, which is capable of storing magnetic coding.

## C. DOCUMENTATION

1. Computer-related documentation consisting of written, recorded, printed or electronically stored material, which explains or illustrates how to configure or use the computer hardware, software, or other related items.

## D. PASSWORDS AND DATA SECURITY DEVICES

2. Computer passwords and other data security devices that are designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alphanumeric characters) usually operates as a sort of digital key to "unlock" particular data security devices. Data security software or digital codes may include programming code that creates "test" keys or "hot" keys, which perform user-defined security-related functions when activated. Data security software or code which might also encrypt, compress, hide or "booby-trap" protected data to make it inaccessible or unreadable as well as reverse the process to restore the data.

3. The above paragraphs include all the foregoing items of evidence in whatever form and by whatever means such materials, their drafts, or their modifications may have been created or stored, including any handmade form (such as writing); any photocopies; any mechanical form (such as printing, or typing); any electrical, electronic, or magnetic form or data (such as any information on an electronic or magnetic storage deice, such as floppy diskettes, hard disks, CD-ROMs, or printer buffers, as well as printouts or readouts or readouts from any magnetic storage device).

4. In addition, computer hardware, software, documentation, passwords, data security devices, and data, as further described in the affidavit incorporated by references into this search warrant, are also to be seized and searched off-site in the manner, which is also described in the affidavit incorporated by reference in to this search warrant. "Mirroring," "imaging," and/or replication is also authorized.